IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL FITZGERALD, | ) | CASE NO. 1:09 CV 1703 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Daniel Fitzgerald, for disability insurance benefits and supplemental security income.  The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Fitzgerald had severe impairments consisting of fractures of the lower limb (healed) and associated chronic pain, Borderline Intellectual Functioning, antisocial personality disorder, and substance abuse disorder.[1]  The ALJ made the following finding regarding Fitzgerald's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 50 pounds occasionally, 25 pounds frequently; with the ability to walk, sit, and stand 6 hours each in an 8 hour day; with unlimited pushing/pulling; limited to

---

[1] Transcript ("Tr.") at 12.

simple repetitive tasks with no production quotas; and limited to low stress work with minimal interaction with the public.[2]

The ALJ determined that the above-quoted residual functional capacity rendered Fitzgerald unable to perform his past relevant work.[3]

Based on a hypothetical question posed to the vocational expert at the hearing incorporating the above-quoted residual functional capacity finding, the ALJ decided that a significant number of jobs existed locally and nationally that Fitzgerald could perform.[4]  He, therefore, found Fitzgerald not under a disability.[5]

Fitzgerald asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, he complains that the ALJ improperly gave greater weight to the opinion of the non-examining agency physician than to that of the consulting examining physician.  Accordingly, Fitzgerald posits the residual functional capacity finding is not supported by substantial evidence.

I conclude that the ALJ erred in giving the non-examining agency physician's opinion greater weight than that of the consulting examining physician and that the residual functional capacity finding does not have the support of substantial evidence, at least for a closed period in 2005 and 2006.  The decision of the Commissioner denying Fitzgerald's applications for disability insurance benefits and supplemental security income must be

---

[2] *Id.* at 17.

[3] *Id.* at 21.

[4] *Id.* at 22.

[5] *Id.* at 23.

reversed and remanded for reconsideration of the residual functional capacity finding, giving appropriate weight to the opinions of the medical sources.

## Analysis

### 1.      The relevant medical evidence, including medical source opinion

Fitzgerald's physical problems stem from a fractured femur he sustained in a fall in April of 2005.[6]  He underwent an open reduction and internal fixation of the fracture, with followup physical therapy and occupational therapy.[7]  Within two months of his surgery, his surgeon, Brendan Patterson, M.D., gave the prognosis that he should be fully weight bearing in three to six months.[8]

In November of 2006, Fitzgerald had a consultative examination with Wilfredo Paras, M.D.  As part of this examination, Dr. Paras performed muscle testing[9] and range of motion testing.[10]  Although Dr. Paras's handwriting is barely legible, counsel seemed to agree that the muscle testing was unreliable.  There appears to be no dispute with the range of motion testing, which disclosed limitations on range of motion in the right hip, knee, and ankle.[11]

---

[6] *Id.* at 12.

[7] *Id.*

[8] *Id.* at 332-33.

[9] *Id.* at 258.

[10] *Id.* at 261.

[11] *Id.*

Dr. Paras opined that Fitzgerald's ability to perform work-related physical activities would be limited because of constant pain in the right hip and femur down to the right knee and his inability to be fully weight bearing on the right lower extremity.[12]

Gerald Klyop, M.D., a state agency reviewing physician, gave a residual functional capacity opinion in December of 2006 that acknowledged Dr. Paras's findings.[13]  He nevertheless rated Fitzgerald capable of lifting 50 pounds occasionally; 25 pounds frequently; and sitting, standing, and/or walking six hours in an eight-hour day.[14] Dr. Klyop offered no explanation as to why he did not impose greater limitations based upon Dr. Paras's evaluation of more limited ability because pain prevented Fitzgerald from full weight bearing on his right leg.  He acknowledged that the examining source's statement regarding Fitzgerald's physical capacities was in the file and that his (Dr. Klyop's) conclusions did not differ significantly from those of the examining physician.[15]

After the evaluations in 2006, Fitzgerald began treating with Syed Akhtar-Zaidi, M.D., a pain management specialist.  In examination reports prepared in October of 2007[16] and March of 2008,[17] Dr. Akhtar-Zaidi noted normal range of motion, normal gait, and good

---

[12] *Id.* at 255-56.

[13] *Id.* at 228-32.

[14] *Id.* at 228.

[15] *Id.* at 233.

[16] *Id.* at 285-86.

[17] *Id.* at 282.

muscle strength in the right lower leg.  An x-ray done in February of 2008 showed that the internal fixation device was well seated in satisfactory position and the absence of acute fractures of the right hip or femur.[18]

## 2.     The residual functional capacity finding

Initially, in the absence of an opinion by a treating physician, I note that the general rule is for the ALJ to give greater weight to opinions from examining sources over those from non-examining sources.[19]  Nevertheless, the opinions of non-examining sources may receive weight if consistent with and supported by the other evidence of record,[20] as well as by reason of any specialization by the reviewer.[21]

An opinion from a non-examining source, such as a state agency's medical reviewing consultant, may, "in appropriate circumstances," be given greater weight than that of a treating or examining source.[22]  Such circumstances exist where the reviewing consultant bases his report on a review of the "complete case record" that includes a report from a medical expert in the particular area of the claimant's alleged impairment that "provides

---

[18] *Id.* at 270.

[19] *Beasley v. Astrue*, No. 4:08-cv-106J, 2009 WL 805126, at  *4 (W.D. Ky. Mar. 25, 2009) (citing 20 C.F.R. §§ 404.1527(d)(1), 404.1527(d)(2), and (f); Social Security Ruling 96-6p, 1996 WL 374180, at *2).

[20] *Id.*; *see also*, *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989).

[21] Social Security Ruling 96-6p, 1996 WL 374180, at *2.

[22] *Id.*, at *3.

more detailed and comprehensive information than what was available to the individual's treating source."[23]

As the Sixth Circuit stated in *Barker v. Shalala*,[24] an ALJ may accept the opinion of a reviewing physician over that of an examining physician where the reviewing physician "had access to the entire medical record in the case," while the examining physician based his opinion on "only" a single, personal observation of the claimant.[25]  But the Sixth Circuit has provided that the non-examining physician's opinion may only be accepted "when the non-examining physician clearly states the reasons that his opinions differ from those of the examining physicians."[26]

The Court's opinion in *Barker* illustrates the circumstances that warrant crediting the opinion of a non-examining source over that of an examining source.  In *Barker*, the ALJ accepted the evaluation of a medical expert who testified at the hearing over that of an examining psychologist.[27]  In his testimony at the hearing, the medical expert acknowledged the examiner's report and opinion and then explained why his opinion differed by reference to evidence in the record.[28]

---

[23] *Id*.

[24] *Barker v. Shalala*, 40 F.3d 789 (6th Cir. 1994).

[25] *Id.* at 794.

[26] *Lyons v. Soc. Sec. Admin.*, 19 F. App'x 294, 2001 WL 1110110, at **7 (6th Cir. 2001) (citing *Barker*, 40 F.3d at 794).

[27] *Barker*, 40 F.3d at 794.

[28] *Id.*

Here, Dr. Klyop, the state reviewing physician, did acknowledge a prior consultative examination of Fitzgerald conducted by Dr. Paras existed in the claimant's file.[29]  Further, Dr. Klyop noted that Dr. Paras's conclusions about Fitzgerald's limitations or restrictions were not significantly different from his own, leaving blank the area where he could explain why any different conclusions on review were not supported by the evidence on file.[30]  Yet, inconsistent with this declaration on review that there were no significant differences with the existing medical evidence regarding Fitzgerald's limitations or restrictions, Dr. Klyop rated Fitzgerald as able to stand, sit or walk for six hours in an eight-hour day,[31] despite Dr. Paras's finding that "constant pain" in Fitzgerald's right hip and femur prevented him from "fully bear[ing] weight on his right lower extremity."[32]

In this case, while it is clear that Dr. Klyop, the state reviewing physician, did meet the first predicate condition for permitting a reviewing physician opinion to be accepted over an opinion of an examining physician – consideration of the entire case file – it is equally clear that Dr. Klyop did not meet the second condition of "clearly stat[ing] the reasons that his opinion[] differ[s] from those of the examining physician[]."[33]  In fact, as noted above, despite reaching a "sit, stand, walk" conclusion as to Fitzgerald that seems to plainly

---

[29] Tr. at 233.

[30] *Id*.

[31] *Id*. at 228.

[32] *Id*. at 256.

[33] *Lyons*, 2001 WL 1110110, at **7.

-7-

contradict the conclusion of Dr. Paras that Fitzgerald could not fully bear weight on his right leg, Dr. Klyop made the internally contradictory statement in his report that his conclusions as to Fitzgerald's limitations were not significantly different from those reached by Dr. Paras. Moreover, by checking that response, Dr. Klyop made no entry in the next space providing for an explanation of any differences between his conclusions as to the claimant's limitations and those of the examining physician.  *Lyons* teaches that such critical, distinguishing information is necessary for the ALJ to credit the opinion of the reviewing physician over that of the examining physician.

On such a record, the ALJ did not have an adequate basis on which to prefer Dr. Klyop's opinion as to Fitzgerald's limitations over that of Dr. Paras for the time period up to the date of Dr. Paras's evaluation in November of 2006.

As already noted, the problems of weight bearing on the right leg appear to have resolved by October of 2007, when Dr. Akhtar-Zaidi evaluated Fitzgerald.[34]  On remand, therefore, the ALJ must determine if a closed end period of disability existed and, if so, the end date of that period.

## Conclusion

Based on the foregoing, the Court concludes that the ALJ's residual functional capacity finding does not have the support of substantial evidence.  The decision of the Commissioner denying Fitzgerald's applications for disability insurance benefits and for

---

[34] Tr. at 285-86.

supplemental security income is reversed.  The case is remanded for reconsideration of the residual functional capacity finding with appropriate weight assigned to the opinions of the consulting, examining physician and the state agency reviewing physician.  If the residual functional capacity finding is modified on remand, then the ALJ should reconsider the findings at step five of the sequential evaluation process with the assistance of the testimony of a vocational expert.  As explained above, a finding of a closed end period of disability may be appropriate.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[35] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.


Dated:  June 23, 2010                                   s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge

---

[35] 28 U.S.C. § 2412(d)(1)(A).